**Todd M. Friedman (216752)**
**Adrian R. Bacon (280332)**
**Meghan E. George (274525)**
**Thomas E. Wheeler (308789)**
**Law Offices of Todd M. Friedman, P.C.**
**21550 Oxnard St., Suite 780**
**Woodland Hills, CA 91367**
**Phone: 877-206-4741**
**Fax: 866-633-0228**
**tfriedman@toddflaw.com**
**abacon@toddflaw.com**
**mgeorge@toddflaw.com**
**twheeler@toddflaw.com**
*Attorneys for Plaintiffs, LAURA MAKENNA, REGINALD SCOTT, LORI MARIE
WEAVER, MARK CASTRO, and DRESSTIN WAGONER, and all others similarly
situated*

## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA MAKENNA, REGINALD SCOTT, LORI MARIE WEAVER, MARK CASTRO, and DRESSTIN WAGONER, individually, and on behalf of other members of the general public similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> AMAZON.COM, LLC, <br><br> Defendant. | Case No. 4:17-cv-04412-YGR <br><br> **FIRST AMENDED CLASS ACTION COMPLAINT** <br><br> (1)  Violation of Unfair Competition Law (Cal. Business & Professions Code §§ 17500 *et seq.*) <br> (2)  Violation of Unfair Competition Law (Cal. Business & Professions Code §§ 17200 *et seq.*) <br> (3)  Violation of Consumer Legal Remedies Act (Cal. Civ. Code §§ 1750 *et seq.*) <br> (4)  Violation of the Deceptive Trade Practices-Consumer Protection Act (Texas Business and Commerce Code § 17.40 *et seq.*) <br> (5)   Violation of Electronic Funds Transfer Act (15 U.S.C. §1693 *et seq.*) <br><br> **Jury Trial Demanded** |

Plaintiffs LAURA MAKENNA, REGINALD SCOTT, LORI MARIE WEAVER, MARK CASTRO, and DRESSTIN WAGONER (collectively, "Plaintiffs"), individually and on behalf of all other members of the public similarly situated, allege as follows:

## NATURE OF THE ACTION

1.     Plaintiffs bring this class action Complaint against Defendant AMAZON.COM, LLC (hereinafter "Defendant") to stop Defendant's practice of falsely advertising its services and to obtain redress for a nationwide class of consumers ("Class Members") who purchased these services, within the applicable statute of limitations period.

2.     Defendant is a Delaware corporation and is engaged in the manufacture, sale, and distribution of computers and related equipment and services with its principle place of business in Delaware and headquarters in Washington.

3.     Defendant represents to its consumers that they could use its services to purchase products directly from its website at no cost to the consumer in addition to the cost of the product.

4.     However, despite these representations, Defendant charged Plaintiffs and similarly situated consumers additional fees. Specifically, when consumers purchased products from Defendant, they were also charged an additional "Amazon Prime" membership fee.

5.     Defendant misrepresented and falsely advertised its services to Plaintiffs and others similarly situated.

6.     Defendant's misrepresentations to Plaintiffs and others similarly situated caused them to use Defendant's services, which Plaintiffs and others similarly situated would not have used absent these misrepresentations by Defendant and its employees. In so doing, Defendant has violated California

1    consumer protection statutes.

2            **NATURE OF THE CASE & COMMON ALLEGATIONS OF FACT**

3        7.    Consumers purchase products on Defendant's website.

4        8.    Consumers rely on the representations and advertisements of retailers

5    in order to know which products and services to use.

6        9.    Defendant is an online company that is engaged in the sale of many

7    different kinds of products through facilitating sales by third party retailers.

8        10.    Consumers use Defendant's representations in order to determine

9    whether or not to use its services and purchase products on Defendant's website.

10       11.    Defendant profits from both from the sale of its products as well as

11   its services. With proper representation, many of the consumers would not have

12   purchased products from Defendant.

13       12.    Defendant conceals that it charges a membership fee when consumers

14   purchase products on its website.

15       13.    Defendant does not present consumers with a written copy of the

16   correct terms of the purchase prior to purchase.

17       14.    Defendant makes written representations to consumers which

18   contradict what is actually charged to Defendants.

19       15.    The aforementioned written and oral representations are objectively

20   false, and constitute a false advertisement under Cal. Bus. & Prof. Code §§ 17500

21   *et. seq.* and Cal. Civ. Code §§ 1750 *et seq.*, and  an unlawful, unfair, or deceptive

22   business practices under Cal. Bus. & Prof. Code §§ 17200 *et. seq.* and Texas

23   Business and Commerce Code § 17.40 *et seq.*.

24       16.    Furthermore, Plaintiffs bring this Class Action Complaint for

25   Defendant's violation of the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et*

26   *seq.*.

27       17.    Defendant's violations of the law include, but not limited to, the false

28

1  advertising, marketing, representations, and sale of the invalid Class Products to
2  consumers in California.

3       18.    On behalf of the class, Plaintiffs seek an injunction requiring
4  Defendant to cease advertising its services as free and an award of damages to the
5  Class Members, together with costs and reasonable attorneys' fees.

6  <center>**JURISDICTION AND VENUE**</center>

7       19.    Jurisdiction is proper under 28 U.S.C. § 1332(d)(2) because minimal
8  diversity exists and the damages Plaintiffs seek exceed five million dollars of
9  money ($5,000,000.00), and 28 U.S.C. 1331 as this Court has federal question
10  jurisdiction as this matter arises out of a question of federal law, namely the
11  Electronic Funds Transfer Act, 15 U.S.C. § 1693 et. seq.

12       20.    Venue is proper in the United States District Court for the Northern
13  District of California pursuant to 28 U.S.C. § 1391(b)(2) because a substantial
14  portion of the events giving rise to this action occurred here.

15  <center>**THE PARTIES**</center>

16       21.    Plaintiff LAURA MAKENNA ("MAKENNA") is a citizen and
17  resident of the State of California, County of San Diego.

18       22.    Plaintiff REGINALD SCOTT ("SCOTT") is a citizen and resident of
19  the State of Texas, County of Harris.

20       23.    Plaintiff LORI MARIE WEAVER ("WEAVER") is a citizen and
21  resident of the State of California, County of Stanislaus.

22       24.    Plaintiff MARK CASTRO ("CASTRO") is a citizen and resident of
23  the State of California, County of Riverside.

24       25.    Plaintiff DRESSTIN WAGONER ("WAGONER") is a citizen and
25  resident of the State of Texas, County of Tarrant.

26       26.    Plaintiffs LAURA MAKENNA, REGINALD SCOTT, LORI
27  MARIE WEAVER, MARK CASTRO, and DRESSTIN WAGONER will

28

collectively be referred to as "Plaintiffs" herein.

23.   Defendant Amazon.com, LLC is a Limited Liability Company with its principle place of business located in Delaware and headquarters in Washington.  Defendant is a Delaware Corporation.  Defendant's principle place of business is within Washington.

24.   Plaintiffs allege, on information and belief, that Defendant's marketing campaigns, as pertains to this matter, were created by Defendant at its principle place of business in California, and were disseminated from California, nationwide.

25.   Plaintiffs are informed and believe, and thereon allege, that at all time relevant, Defendant's sales of products and services are governed by the controlling law in the state in which it does business and from which the sales or products and services, and the allegedly unlawful acts originated, which is California.

26.   Plaintiffs are informed and believe, and thereon allege, that each and all of the acts and omissions alleged herein were performed by, or is attributable to, Defendant and/or its employees, agents, and/or third parties acting on its behalf, each acting as the agent for the other, with legal authority to act on the other's behalf.  The acts of any and all of Defendant's employees, agents, and/or third parties acting on its behalf, were in accordance with, and represent, the official policy of Defendant.

27.   Plaintiffs are informed and believe, and thereon allege, that said Defendant is in some manner intentionally, negligently, or otherwise responsible for the acts, omissions, occurrences, and transactions of each and all its employees, agents, and/or third parties acting on its behalf, in proximately causing the damages herein alleged.

28.   At all relevant times, Defendant ratified each and every act or

omission complained of herein. At all relevant times, Defendant, aided and abetted the acts and omissions as alleged herein.

<div align="center">

**PLAINTIFF LAURA MAKENNA' FACTS**

</div>

29.    In 2012, MAKENNA went to Defendant's website and purchased some products utilizing Defendant's services.

30.    In utilizing these services, Plaintiff MAKENNA was informed through various written representations by Defendant that she would not be charged for membership and only the products that she purchased.

31.    As a result of Defendant's representations, MAKENNA provided Defendant with her debit card information in order to purchase the products referred to above.

32.    However, Defendant upgraded her account to the premium membership known as "Amazon Prime" without her permission or knowledge.

33.    Over the next several years, from 2012 through 2016, MAKENNA was charged by Defendant each year for the premium "Amazon Prime" membership. That is, over the span of several years, Defendant automatically and regularly deducted funds from MAKENNA's debit card account sans MAKENNA's knowledge or consent.

34.    Including taxes and fees, MAKENNA was charged on her debit card for over $400.00 for the premium membership.

35.    MAKENNA is informed, believes, and thereupon alleges that Defendant set up MAKENNA's payment of the unauthorized and undesired membership to automatically withdraw money directly from MAKENNA's bank account.

36.    MAKENNA did not realize that Defendant had been making automatic and regular deductions from her debit card until within the last year, and she demanded that Defendant cease doing so at her first opportunity and canceled

1    her membership.

2        37.    MAKENNA is informed, believes, and thereupon alleges that had not

3    MAKENNA canceled the membership services, the Defendant would have taken

4    additional unauthorized, multiple, and reoccurring payments from MAKENNA's

5    bank account.

6        38.    MAKENNA was drawn to use Defendant's website in part by

7    Defendant's prices.

8        39.    Relying on Defendant's assurances that the prices by Defendant

9    would be accurate, MAKENNA decided to purchase products from Defendant's

10   website.

11       40.    Such sales tactics rely on falsities and have a tendency to mislead and

12   deceive a reasonable consumer.

13       41.    MAKENNA alleges that Defendant's representations were part of a

14   common scheme to mislead consumers and incentivize them to purchase products

15   from its website.

16       42.    In purchasing the products from Defendant, MAKENNA relied upon

17   Defendant's representations.

18       43.    MAKENNA would not have purchased products from Defendant if

19   she knew that the above-referenced statements made by Defendant were false.

20       44.    Had Defendant properly marketed, advertised, and represented its

21   services as costing a hidden fee, MAKENNA would not have used Defendant's

22   services.

23       45.    MAKENNA gave her money to Defendant because of the prices of

24   Defendant's products. Defendant benefited from falsely advertising its products

25   and services. MAKENNA received nothing for giving her money to Defendant.

26   Defendant benefited on the loss to MAKENNA and provided nothing of benefit

27   to MAKENNA in exchange.

28

46.   Had Defendant properly marketed, advertised, and represented its services, no reasonable consumer who purchased a printer would have believed that they could purchase products from Defendant without paying a membership fee.

## PLAINTIFF REGINALD SCOTT'S FACTS

47.   In 2015, SCOTT went to Defendant's website and purchased some products utilizing Defendant's services.

48.   In utilizing these services, SCOTT was informed through various written representations by Defendant that he would not be charged for membership and only the products that he purchased.

49.   As a result of Defendant's representations, SCOTT provided Defendant with his debit card information in order to purchase the products referred to above.

50.   However, Defendant upgraded his account to the premium membership known as "Amazon Prime" without his permission or knowledge.

51.   Over the next two years, from 2015 through 2017, SCOTT was charged by Defendant multiple times for the premium "Amazon Prime" membership. That is, from 205 through 2017, Defendant automatically and regularly deducted funds from SCOTT's debit card account in the amount of $107.17 sans SCOTT's knowledge or consent.

52.   SCOTT is informed, believes, and thereupon alleges that Defendant set up SCOTT's payment of the unauthorized and undesired membership to automatically withdraw money directly from SCOTT's bank account.

53.   SCOTT did not realize that Defendant had been making automatic and regular deductions from his debit card until within the last year, and he demanded that Defendant cease doing so at his first opportunity and canceled his membership.

54.     SCOTT is informed, believes, and thereupon alleges that had not SCOTT canceled the membership services, the Defendant would have taken additional unauthorized, multiple, and reoccurring payments from SCOTT's bank account.

55.     Furthermore, Defendant refused to give SCOTT a full refund based on Defendant's policy on only refunding money to the card from which funds were taken. In other words, Defendant refused to refund SCOTT's money merely because SCOTT had since closed the account from which Defendant deducted funds.

56.     SCOTT was drawn to use Defendant's website in part by Defendant's prices.

57.     Relying on Defendant's assurances that the prices by Defendant would be accurate, SCOTT decided to purchase products from Defendant's website.

58.     Such sales tactics rely on falsities and have a tendency to mislead and deceive a reasonable consumer.

59.     SCOTT alleges that Defendant's representations were part of a common scheme to mislead consumers and incentivize them to purchase products from its website.

60.     In purchasing the products from Defendant, SCOTT relied upon Defendant's representations.

61.     SCOTT would not have purchased products from Defendant if he knew that the above-referenced statements made by Defendant were false.

62.     Had Defendant properly marketed, advertised, and represented its services as costing a hidden fee, SCOTT would not have used Defendant's services.

63.     SCOTT gave his money to Defendant because of the prices of

Defendant's products. Defendant benefited from falsely advertising its products and services. SCOTT received nothing for giving his money to Defendant. Defendant benefited on the loss to SCOTT and provided nothing of benefit to SCOTT in exchange.

64.     Had Defendant properly marketed, advertised, and represented its services, no reasonable consumer who purchased a printer would have believed that they could purchase products from Defendant without paying a membership fee.

**PLAINTIFF LORI MARIE WEAVER'S FACTS**

65.     In or around 2016, WEAVER went to Defendant's website and purchased some products utilizing Defendant's services.

66.     In utilizing these services, WEAVER was informed through various written representations by Defendant that she would not be charged for membership with "Amazon Prime" and only the products that she purchased.

67.     As a result of Defendant's representations, WEAVER provided Defendant with her debit card information in order to purchase the products referred to above.

68.     However, Defendant upgraded her account to the premium membership known as "Amazon Prime" without her permission or knowledge.

69.     That is, Plaintiff paid a onetime fee for "Amazon Prime" as represented by Defendant, for one year, but after that year, Defendant enrolled her in "Amazon Prime" membership and continued to debit her account without her knowledge or consent.

70.     WEAVER is informed, believes, and thereupon alleges that Defendant set up WEAVER's payment of the unauthorized and undesired membership to automatically withdraw money directly from WEAVER's bank account.

71.    WEAVER did not realize that Defendant had been making automatic and regular deductions from her debit card until within the last year, and she demanded that Defendant cease doing so at her first opportunity and canceled her membership.

72.    WEAVER is informed, believes, and thereupon alleges that had not WEAVER canceled the membership services, the Defendant would have taken additional unauthorized, multiple, and reoccurring payments from WEAVER's bank account.

73.    WEAVER was drawn to use Defendant's website in part by Defendant's prices.

74.    Relying on Defendant's assurances that the prices by Defendant would be accurate, WEAVER decided to purchase products from Defendant's website.

75.    Such sales tactics rely on falsities and have a tendency to mislead and deceive a reasonable consumer.

76.    WEAVER alleges that Defendant's representations were part of a common scheme to mislead consumers and incentivize them to purchase products from its website.

77.    In purchasing the products from Defendant, WEAVER relied upon Defendant's representations.

78.    WEAVER would not have purchased products from Defendant if she knew that the above-referenced statements made by Defendant were false.

79.    Had Defendant properly marketed, advertised, and represented its services as costing a hidden fee, WEAVER would not have used Defendant's services.

80.    WEAVER gave her money to Defendant because of the prices of Defendant's products. Defendant benefited from falsely advertising its products

and services. WEAVER received nothing for giving her money to Defendant. Defendant benefited on the loss to WEAVER and provided nothing of benefit to WEAVER in exchange.

81.    Had Defendant properly marketed, advertised, and represented its services, no reasonable consumer who purchased a printer would have believed that they could purchase products from Defendant without paying a membership fee.

## PLAINTIFF MARK CASTRO'S FACTS

82.    In or around late 2016 or early 2017, CASTRO went to Defendant's website and purchased some products utilizing Defendant's services.

83.    In utilizing these services, CASTRO was informed through various written representations by Defendant that he would not be charged for membership and only the products that he purchased.

84.    As a result of Defendant's representations, CASTRO provided Defendant with his debit card information in order to purchase the products referred to above.

85.    However, Defendant upgraded his account to the premium membership known as "Amazon Prime" without his permission or knowledge.

86.    Over the course of several months, from late 2016 through the present, CASTRO was charged by Defendant multiple times for the premium "Amazon Prime" membership.

87.    CASTRO is informed, believes, and thereupon alleges that Defendant set up CASTRO's payment of the unauthorized and undesired membership to automatically withdraw money directly from CASTRO's bank account.

88.    As soon as CASTRO realized that Defendant had been making automatic deductions from his bank account, he cancelled his membership.

89.    CASTRO is informed, believes, and thereupon alleges that had not

CASTRO canceled the membership services, the Defendant would have taken additional unauthorized, multiple, and reoccurring payments from CASTRO's bank account.

90.     CASTRO was drawn to use Defendant's website in part by Defendant's prices.

91.     Relying on Defendant's assurances that the prices by Defendant would be accurate, CASTRO decided to purchase products from Defendant's website.

92.     Such sales tactics rely on falsities and have a tendency to mislead and deceive a reasonable consumer.

93.     CASTRO alleges that Defendant's representations were part of a common scheme to mislead consumers and incentivize them to purchase products from its website.

94.     In purchasing the products from Defendant, SCOTT relied upon Defendant's representations.

95.     SCOTT would not have purchased products from Defendant if he knew that the above-referenced statements made by Defendant were false.

96.     Had Defendant properly marketed, advertised, and represented its services as costing a hidden fee, SCOTT would not have used Defendant's services.

97.     SCOTT gave his money to Defendant because of the prices of Defendant's products. Defendant benefited from falsely advertising its products and services. SCOTT received nothing for giving his money to Defendant. Defendant benefited on the loss to SCOTT and provided nothing of benefit to SCOTT in exchange.

98.     Had Defendant properly marketed, advertised, and represented its services, no reasonable consumer who purchased a printer would have believed

that they could purchase products from Defendant without paying a membership fee.

## PLAINTIFF DRESSTIN WAGONER'S FACTS

99.   In or around August of 2016, WAGONER went to Defendant's website and purchased some products utilizing Defendant's services.

100.   In utilizing these services, WAGONER was informed through various written representations by Defendant that he would not be charged for membership and only for the products that he purchased.

101.   As a result of Defendant's representations, WAGONER provided Defendant with his debit card information in order to purchase the products referred to above.

102.   However, Defendant upgraded his account to the premium membership known as "Amazon Prime" without his permission or knowledge.

103.   Including taxes and fees WAGONER was charged on his debit card for over $107.17 for the premium membership. Also, Defendant charged WAGONER $11.9 for a renewal of his "Amazon Prime" membership and automatically deducted that amount from his banking or debit card account.

104.   WAGONER is informed, believes, and thereupon alleges that Defendant set up WAGONER's payment of the unauthorized and undesired membership to automatically withdraw money directly from WAGONER's bank account.

105.   WAGONER canceled the membership with Defendant after one withdrawal of $11.9.

106.   However, Defendant continued to charge WAGONER for "Amazon Prime" an additional $107.17.

107.   WAGONER is informed, believes, and thereupon alleges that had he not canceled the membership services, Defendant would have taken additional

unauthorized, multiple, and reoccurring payments from his bank account.

108.    WAGONER was drawn to use Defendant's website in part by Defendant's prices.

109.    Relying on Defendant's assurances that the prices by Defendant would be accurate, WAGONER decided to purchase products from Defendant's website.

110.    Such sales tactics rely on falsities and have a tendency to mislead and deceive a reasonable consumer.

111.    WAGONER alleges that Defendant's representations were part of a common scheme to mislead consumers and incentivize them to purchase products from its website.

112.    In purchasing the products from Defendant, WAGONER relied upon Defendant's representations.

113.    WAGONER would not have purchased products from Defendant if he knew that the above-referenced statements made by Defendant were false.

114.    Had Defendant properly marketed, advertised, and represented its services as costing a hidden fee, WAGONER would not have used Defendant's services.

115.    WAGONER gave his money to Defendant because of the prices of Defendant's products. Defendant benefited from falsely advertising its products and services. WAGONER received nothing for giving his money to Defendant. Defendant benefited on the loss to WAGONER and provided nothing of benefit to WAGONER in exchange.

116.    Had Defendant properly marketed, advertised, and represented its services, no reasonable consumer who purchased a printer would have believed that they could purchase products from Defendant without paying a membership fee.

## CLASS ACTION ALLEGATIONS

117.   Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

118.   Plaintiffs bring this action, on behalf of themselves and all others similarly situated, and thus, seeks class certification under *Federal Rule 23*.

119.   The class Plaintiffs seek to represent (the "Class") is defined as follows:

> All consumers in the United States, who, between the applicable statute of limitations and the present, used Defendant's services and were charged an additional membership fee.

120.   As used herein, the term "Class Members" shall mean and refer to the members of the Class described above.

121.   Excluded from the Class are Defendant, its affiliates, employees, agents, and attorneys, and the Court.

122.   In addition, Plaintiffss seek to represent the subclass ("EFTA subclass") defined as follows:

> All persons in the United States whose bank accounts were debited on a reoccurring basis by Defendants without Defendants obtaining a written authorization signed or similarly authenticated for preauthorized electronic fund transfers within the one year prior to the filing of this Complaint.

123.   Plaintiffs MAKENNA, WEAVER, and CASTRO also seek to represent the subclass ("California subclass") defined as follows:

> All consumers in California, who, between the applicable statute of limitations and the present, used Defendant's services and were charged an additional membership fee.

124.   Plaintiffs WAGONER and SCOTT seek to represent the subclass ("Texas subclass") defined as follows:

All consumers in Texas, who, between the applicable statute of limitations and the present, used Defendant's services and were charged an additional membership fee.

125.   Plaintiffs reserve the right to amend the Class, and to add additional subclasses, if discovery and further investigation reveals such action is warranted.

126.   Upon information and belief, the proposed class is composed of thousands of persons.  The members of the class are so numerous that joinder of all members would be unfeasible and impractical.

127.   No violations alleged in this complaint are contingent on any individualized interaction of any kind between class members and Defendant.

128.   Rather, all claims in this matter arise from the identical, false, affirmative written statements that consumers would not need to pay additional fees to purchase products from Defendant's website.

129.   There are common questions of law and fact as to the Class Members that predominate over questions affecting only individual members, including but not limited to:

        (a)      Whether Defendant engaged in unlawful, unfair, or deceptive business practices in charging Plaintiffs and other Class Members for membership fees when they purchased products from Defendant;

        (b)      Whether Defendant made misrepresentations with respect to its services;

        (c)      Whether Defendant profited from charging membership fees;

        (d)      Whether Defendant violated Texas Business and Commerce Code § 17.40 *et seq*.; California Bus. & Prof. Code § 17200, *et seq*., California Bus. & Prof. Code § 17500, *et seq*., and California Civ. Code § 1750, *et seq*.;

        (e)      Whether Plaintiffs and Class Members are entitled to equitable

and/or injunctive relief;

(f)     Whether Defendant's unlawful, unfair, and/or deceptive practices harmed Plaintiffs and Class Members; and

(g)     The method of calculation and extent of damages for Plaintiffs and Class Members.

130.   Plaintiffs are members of the class they seeks to represent

131.   The claims of Plaintiffs are not only typical of all class members, they are identical.

132.   All claims of Plaintiffs and the class are based on the exact same legal theories.

133.   Plaintiffs have no interest antagonistic to, or in conflict with, the class.

134.   Plaintiffs are qualified to, and will, fairly and adequately protect the interests of each Class Member, because Plaintiff bought Class Products from Defendant during the Class Period.  Defendant's unlawful, unfair and/or fraudulent actions concerns the same business practices described herein irrespective of where they occurred or were experiences.  Plaintiffs' claims are typical of all Class Members as demonstrated herein.

135.   Plaintiffs will thoroughly and adequately protect the interests of the class, having retained qualified and competent legal counsel to represent themselves and the class.

136.   Common questions will predominate, and there will be no unusual manageability issues.

FIRST AMENDED CLASS ACTION COMPLAINT

# FIRST CAUSE OF ACTION

## Violation of the California False Advertising Act

### (Cal. Bus. & Prof. Code §§ 17500 *et seq.*)

### -Plaintiffs MAKENNA, WEAVER, & CASTRO and the California SubClass-

137.   Plaintiffs incorporate by reference each allegation set forth above.

138.   Pursuant to California Business and Professions Code section 17500, *et seq.*, it is unlawful to engage in advertising "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading...or...to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised."

139.   California Business and Professions Code section 17500, *et seq.*'s prohibition against false advertising extends to the use of false or misleading written statements.

140.   Defendant misled consumers by making misrepresentations and untrue statements about its services, namely, Defendant informed Plaintiffs and California Subclass Members that it would not charge them for membership fees in order to purchase products on its website, and made false representations to Plaintiffs and other putative California Subclass members in order to solicit these transactions.

141.   Defendant knew that their representations and omissions were untrue and misleading, and deliberately made the aforementioned representations and omissions in order to deceive reasonable consumers like Plaintiffs and other California Subclass Members.

142.   As a direct and proximate result of Defendant's misleading and false

advertising, Plaintiffs and the other California Subclass Members have suffered injury in fact and have lost money or property.  Plaintiffs reasonably relied upon Defendant's representations regarding Defendant's services.   In reasonable reliance on Defendant's false advertisements, Plaintiffs and other California Subclass Members purchased products from Defendant.  In turn, Plaintiffs and other California Subclass Members were charged more than represented, and therefore Plaintiffs and other California Subclass Members have suffered injury in fact.

143.   Plaintiffs allege that these false and misleading written representations made by Defendant constitute a "scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised."

144.   Defendant advertised to Plaintiffs and other putative California Subclass members, through written representations and omissions made by Defendant and its employees, that they could purchase products without paying a membership fee.

145.   Defendant knew that a membership fee would be charged.

146.   Thus, Defendant knowingly sold charged Plaintiffs and other putative California Subclass members for fees that it represented as not charging.

147.   The misleading and false advertising described herein presents a continuing threat to Plaintiffs and the California Subclass Members in that Defendant persists and continues to engage in these practices, and will not cease doing so unless and until forced to do so by this Court.  Defendant's conduct will continue to cause irreparable injury to consumers unless enjoined or restrained. Plaintiffs are entitled to preliminary and permanent injunctive relief ordering Defendant to cease their false advertising, as well as disgorgement and restitution to Plaintiffs and all California Subclass Members Defendant's revenues associated

with their false advertising, or such portion of those revenues as the Court may find equitable.

## SECOND CAUSE OF ACTION

### Violation of Unfair Business Practices Act

### (Cal. Bus. & Prof. Code §§ 17200 *et seq.*)

### -Plaintiffs MAKENNA, WEAVER, & CASTRO and the California Subclass-

148.   Plaintiffs incorporate by reference each allegation set forth above.

149.   Actions for relief under the unfair competition law may be based on any business act or practice that is within the broad definition of the UCL.  Such violations of the UCL occur as a result of unlawful, unfair or fraudulent business acts and practices.   A plaintiff is required to provide evidence of a causal connection between a defendant's business practices and the alleged harm--that is, evidence that the defendant's conduct caused or was likely to cause substantial injury. It is insufficient for a plaintiff to show merely that the defendant's conduct created a risk of harm.  Furthermore, the "act or practice" aspect of the statutory definition of unfair competition covers any single act of misconduct, as well as ongoing misconduct.

### UNFAIR

150.   California Business & Professions Code § 17200 prohibits any "unfair ... business act or practice."   Defendant's acts, omissions, misrepresentations, and practices as alleged herein also constitute "unfair" business acts and practices within the meaning of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.  There were reasonably available alternatives to further Defendant's legitimate business interests, other than the

conduct described herein.  Plaintiff reserves the right to allege further conduct which constitutes other unfair business acts or practices.  Such conduct is ongoing and continues to this date.

151.  In order to satisfy the "unfair" prong of the UCL, a consumer must show that the injury: (1) is substantial; (2) is not outweighed by any countervailing benefits to consumers or competition; and, (3) is not one that consumers themselves could reasonably have avoided.

152.  Here, Defendant's conduct has caused and continues to cause substantial injury to Plaintiff and members of the California Subclass.  Plaintiffs and members of the California Subclass have suffered injury in fact due to Defendant's decision to charge them for its services in order to buy products.  Thus, Defendant's conduct has caused substantial injury to Plaintiffs and the members of the California Subclass.

153.  Moreover, Defendant's conduct as alleged herein solely benefits Defendant while providing no benefit of any kind to any consumer.  Such deception utilized by Defendant convinced Plaintiffs and members of the California Subclass that Defendant's services were free, in order to induce them to spend money on its website.  In fact, knowing that Defendant's services cost money, Defendant's unfairly profited from Plaintiffs and California Subclass Members.  Thus, the injury suffered by Plaintiffs and the members of the California Subclass is not outweighed by any countervailing benefits to consumers.

154.  Finally, the injury suffered by Plaintiffs and members of the California Subclass is not an injury that these consumers could reasonably have avoided.  After Defendant, falsely represented Defendant's services, these consumers suffered injury in fact due to Defendant's charge for premium membership.  Defendant failed to take reasonable steps to inform Plaintiffs and

California Subclass members that Defendant's services included a charge for premium membership, including failing to provide an opportunity to Plaintiffs and California Subclass members to read and review the accurate conditions of the purchase prior to purchasing items from Defendant.  As such, Defendant took advantage of Defendant's position of perceived power in order to deceive Plaintiffs and the California Subclass members to use its services.  Therefore, the injury suffered by Plaintiffs and members of the California Subclass is not an injury which these consumers could reasonably have avoided.

155.  Thus, Defendant's conduct has violated the "unfair" prong of California Business & Professions Code § 17200.

## FRAUDULENT

156.  California Business & Professions Code § 17200 prohibits any "fraudulent ... business act or practice."  In order to prevail under the "fraudulent" prong of the UCL, a consumer must allege that the fraudulent business practice was likely to deceive members of the public.

157.  The test for "fraud" as contemplated by California Business and Professions Code § 17200 is whether the public is likely to be deceived.  Unlike common law fraud, a § 17200 violation can be established even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage.

158.  Here, not only were Plaintiffs and the California Subclass members likely to be deceived, but these consumers were actually deceived by Defendant. Such deception is evidenced by the fact that Plaintiffs purchased products using Defendant's website under the basic assumption that he would not be charged an additional price.  Plaintiffs' reliance upon Defendant's deceptive statements is reasonable due to the unequal bargaining powers of Defendant and Plaintiffs. For the same reason, it is likely that Defendant's fraudulent business practice would deceive other members of the public.

159.   As explained above, Defendant deceived Plaintiffs and other California Subclass Members by representing its services as being free, falsely represented these services to consumers.

160.   Thus, Defendant's conduct has violated the "fraudulent" prong of California Business & Professions Code § 17200.

## UNLAWFUL

161.   California Business and Professions Code Section 17200, et seq. prohibits "any unlawful…business act or practice."

162.   As explained above, Defendant deceived Plaintiffs and other California Subclass Members by representing the services as being free.

163.   Defendant used false advertising, marketing, and misrepresentations to induce Plaintiffs and California Subclass Members to purchase the California Subclass Products, in violation of California Business and Professions Code Section 17500, et seq.   Had Defendant not falsely advertised, marketed or misrepresented the California Subclass Products, Plaintiffs and California Subclass Members would not have purchased the California Subclass Products. Defendant's conduct therefore caused and continues to cause economic harm to Plaintiffs and California Subclass Members.

164.   These representations by Defendant are therefore an "unlawful" business practice or act under Business and Professions Code Section 17200 *et seq*.

165.   Defendant has thus engaged in unlawful, unfair, and fraudulent business acts entitling Plaintiffs and California Subclass Members to judgment and equitable relief against Defendant, as set forth in the Prayer for Relief. Additionally, pursuant to Business and Professions Code section 17203, Plaintiff and California Subclass Members seek an order requiring Defendant to immediately cease such acts of unlawful, unfair, and fraudulent business practices

1  and requiring Defendant to correct its actions.

2  <center>**THIRD CAUSE OF ACTION**</center>

3  <center>**Violation of Consumer Legal Remedies Act**</center>

4  <center>**(Cal. Civ. Code § 1750 *et seq.*)**</center>

5  <center>**-Plaintiffs MAKENNA, WEAVER, & CASTRO and the California**</center>

6  <center>**Subclass-**</center>

7  166.   Plaintiffs incorporate by reference each allegation set forth above

8  herein.

9  167.   Defendant's actions as detailed above constitute a violation of the

10  Consumer Legal Remedies Act, Cal. Civ. Code §1770 to the extent that Defendant

11  violated the following provisions of the CLRA:

12
13  a.  Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or he does not have. Cal. Civ. Code § 1770(5);

14
15
16  b.  Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.  Cal. Civ. Code § 1770(7);

17
18
19  c.  Advertising goods or services with intent not to sell them as advertised; *Cal. Civ. Code* §1770(9);

20
21  d.  Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law; *Cal. Civ. Code* §1770(14); and

22
23
24  e.  Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not; *Cal. Civ. Code* §1770(16);

25  168.   On or about August 3, 2017 and September 25, 2017, through their

26  Counsel of record, using certified mail with a return receipt requested, Plaintiffs,

27  served Defendants with notice of its violations of the CLRA, and asked that

28

Defendants correct, repair, replace or otherwise rectify the goods and services alleged to be in violation of the CLRA; this correspondence advised Defendants that they must take such action within thirty (30) calendar days, and pointed Defendants to the provisions of the CLRA that Plaintiffs believe to have been violated by Defendants. Defendants have not replied to this correspondence, and have thereby refused to timely correct, repair, replace or otherwise rectify the issues raised therein. In addition, Plaintiffs will separately file a Venue Affidavit in compliance with the requirements of the CLRA.

### FOURTH CAUSE OF ACTION

### Violation of Texas' Deceptive Trade Practices-Consumer Protection Act

### (Texas Business and Commerce Code § 17.40, *et seq.*)

### -Plaintiffs WAGONER & SCOTT and the Texas Subclass-

169.   Plaintiffs incorporates by reference each allegation set forth above.

170.   Texas Business and Commerce Code  §§ 17.50, *et seq*., is part of Texas' Deceptive Trade Practices-Consumer Protection Act ("DTPA") and provides in relevant part:

(a)   A consumer may maintain an action where any of the following

constitute a producing cause of economic damages or damages for

mental anguish:

(1)   The use or employment by any person of a false, misleading, or deceptive act or practice that is [or]…

(3)   any unconscionable action or course of action by any person . . . .

171.   In doing the acts alleged above, Defendant engaged in false, misleading, deceptive, and unconscionable acts and practices.

172.   Defendant misled Plaintiffs and the Texas Subclass by making misrepresentations and untrue statements about their services, namely that Purchasers would not be charged for or automatically enrolled in "Amazon

Prime," and made false representations to Plaintiff and other putative class members in order to solicit these transactions.

173. Specifically, Defendant advertised  Texas Subclass would not be automatically charged for "Amazon Prime" membership, nor would they be automatically enrolled therein.

174. Defendant knew that their representations and omissions were untrue and misleading, and deliberately made the aforementioned representations and omissions in order to deceive reasonable Purchasers like Plaintiff and other Texas Subclass Members.

175. As a direct and proximate result of Defendant's misleading and false advertising, Plaintiff and the Texas Subclass Members have suffered injury in fact and have lost money or property.  Plaintiff reasonably relied upon Defendant's representations regarding the Class Products, namely that they would not be automatically enrolled in "Amazon Prime" resulting in their savings or debit card accounts being charged without their consent. In reasonable reliance on Defendant's false advertisements, Plaintiffs and other Texas Subclass Members purchased the Class Products.  In turn Plaintiffs and other Texas Subclass Members ended up with unwanted charges to their savings or debit card accounts and were automatically enrolled in "Amazon Prime" which turned out to actually be different than advertised, and therefore Plaintiff and other Texas Subclass Members have suffered injury in fact.

176. Plaintiffs allege that these false and misleading written representations made by Defendant constitute a "scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised."

177. Defendant advertised to Plaintiffs and other putative Texas Subclass members, through written representations and omissions made by Defendant and

its employees, that they would not be automatically enrolled in "Amazon Prime" and have their savings or debit card accounts automatically charged.

178.   Defendant knew that   Texas Subclass Members, by making a purchase, would be automatically enrolled in "Amazon Prime," and Defendant would then charge their savings or debit card accounts.

179.   Thus, Defendant knowingly sold Class Products to Plaintiffs and other putative Texas Subclass members that resulted in them being automatically enrolled in "Amazon Prime" and their savings or debit card accounts charged by Defendant.

180.   In committing the acts alleged above, Defendants also engaged in the following acts set forth in TEX. BUS. & COM. CODE § 17.46, among others, which provides in pertinent part:

> (a)   False, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful
>    . . .
> (b)   Except as provided in Subsection (d) of this section, the term "false, misleading, or deceptive acts or practices" includes, but is not limited to, the following acts: ...
> (5)   representing that goods or services have ... characteristics, ... [or] benefits ... which they do not have ... ;
> (7)   representing that goods or services are of a particular standard, quality, or grade, ... if they are of another; ...
> (9)   advertising goods or services with intent not to sell them as advertised; ...
> (24)  failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

181.   The misleading and false advertising described herein presents a continuing threat to Plaintiffs and the Texas Subclass Members in that Defendant persists and continues to engage in these practices, and will not cease doing so unless and until forced to do so by this Court.  Defendant's conduct will continue

to cause irreparable injury to Purchasers unless enjoined or restrained.  Plaintiffs are entitled to preliminary and permanent injunctive relief ordering Defendant to cease their false advertising, as well as disgorgement and restitution to Plaintiffs and all Texas Subclass Members Defendant's revenues associated with their false advertising, or such portion of those revenues as the Court may find equitable.

## FIFTH CAUSE OF ACTION

### Electronic Funds Transfer Act

### (15 U.S.C. Section 1693 *et seq*.)

### - Plaintiffs and the Class and EFTA Sub Class-

182.   Section 907(a) of the EFTA, 15 U.S.C. §1693e(a), provides that a "preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made."

183.   Section 903(9) of the EFTA, 15 U.S.C. § 1693a(9), provides that the term "preauthorized electronic fund transfer" means "an electronic fund transfer authorized in advance to recur at substantially regular intervals."

184.   Section 205.l0(b) of Regulation E, 12 C.F.R. § 205.l0(b), provides that "[p ]reauthorized electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer.  The person that obtains the authorization shall provide a copy to the consumer."

185.   Section 205.10(b) of the Federal Reserve Board's Official Staff Commentary to Regulation E, 12 C.F.R. § 205.l0(b), Supp. I, provides that "[t]he authorization process should evidence the consumer's identity and assent to the authorization."  *Id.* at ¶10(b), comment 5.  The Official Staff Commentary

further provides that "[a]n authorization is valid if it is readily identifiable as such and the terms of the preauthorized transfer are clear and readily understandable." *Id.* at ¶10(b), comment 6.

186.   In multiple instances, Defendants have debited Plaintiffs' and the Class and EFTA Subclass' bank accounts on a recurring basis without obtaining a written authorization signed or similarly authenticated for preauthorized electronic fund transfers from Plaintiffs the Class and EFTA Subclass' accounts, thereby violating Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.l0(b).

187.   In multiple instances, Defendants have debited Plaintiffs the Class and EFTA Subclass' bank accounts on a recurring basis without providing a copy of a written authorization signed or similarly authenticated by Plaintiffs the Class and EFTA Subclass' for preauthorized electronic fund transfers, thereby violating Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.l0(b).

## MISCELLANEOUS

188.   Plaintiffs and Class Members allege that they have fully complied with all contractual and other legal obligations and fully complied with all conditions precedent to bringing this action or all such obligations or conditions are excused.

## REQUEST FOR JURY TRIAL

189.   Plaintiffs request a trial by jury as to all claims so triable.

## PRAYER FOR RELIEF

190.   Plaintiffs, on behalf of himself and the Class, requests the following relief:

> (a)   An order certifying the Class and appointing Plaintiffs as Representative of the Class;

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(b)    An order certifying the undersigned counsel as Class Counsel;

(c)    An order requiring AMAZON.COM, LLC, at its own cost, to notify all Class Members of the unlawful and deceptive conduct herein;

(d)    An order requiring AMAZON.COM, LLC to engage in corrective advertising regarding the conduct discussed above;

(e)    Actual damages suffered by Plaintiffs and Class Members as applicable or full restitution of all funds acquired from Plaintiffs and Class Members from the sale of misbranded Class Products and Services during the relevant class period;

(f)    Punitive damages, as allowable, in an amount determined by the Court or jury;

(g)    Any and all statutory enhanced damages;

(h)    All reasonable and necessary attorneys' fees and costs provided by statute, common law or the Court's inherent power;

(i)    Pre- and post-judgment interest; and

(j)    All other relief, general or special, legal and equitable, to which Plaintiffs and Class Members may be justly entitled as deemed by the Court.

Dated: September 25, 2017    Respectfully submitted,

LAW OFFICES OF TODD M. FRIEDMAN , PC

By: /s/Todd M. Friedman, Esq.

TODD M. FRIEDMAN, ESQ.

Attorney for Plaintiffs LAURA

MAKENNA, REGINALD SCOTT,

LORI MARIE WEAVER, MARK

CASTRO, and DRESSTIN WAGONER

FIRST AMENDED CLASS ACTION COMPLAINT

1
2

## **PROOF OF SERVICE**

3

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is The Law Offices of Todd M. Friedman, P.C., 21550 Oxnard St., Suite 780, Woodland Hills, CA 91367. On September 25, 2017, I served the within document(s):

4
5

6

**FIRST AMENDED COMPLAINT**

7

- were served on all parties or their counsel of record named below by serving a true and correct copy in the manner indicated.

8
9

10  Scott R. Commerson
DAVIS WRIGHT TREMAINE LLP

11  865 South Figueroa St., 24th Fl.
Los Angeles, CA 90017

12  scottcommerson@dwt.com

13

14  ☒    ECF – I caused the above document(s) and all supporting papers to be served on all counsel named above to through the ECF system.

15

16  I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

17
18
19

20  I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on September 25, 2017, at Woodland Hills, California.

21
22

23

24

s/Todd M. Friedman
Todd M. Friedman

25

26

27

28